In the Matter of the Estate of ROBERT ENRIGHT, Deceased.*

Surrogate's Court, Kings County, January 17, 1931.

*Francis J. McManamy, Jr.,* for the petitioner.

*Kopald & Haft,* for the contestants.

*Edward L. Kelly,* special guardian for John F. McCarthy and William A. McCarthy, infants.

WINGATE, S. The questions here presented relate to the timeliness of filing and the validity of certain objections to a portion of the holographic will of the above-named decedent, and to the rights of such objecting parties to a determination of the issues attempted to be raised by a jury.

The chronological statement of the proceedings had herein is as follows:

* See, also, 139 Misc. 192.

On September 19, 1930, the petitioner filed in this court a certain document purporting to be the last will and testament of Robert Enright, who died in Brooklyn, N. Y., on September 5, 1930, together with the original alleged will, and on that date a citation was duly issued out of this court to the heirs at law and next of kin of the decedent enumerated in the petition, among those to Morgan Enright and Daniel Enright, the objecting parties. This citation was returnable on the 21st of October, 1930, and according to the affidavit of service attached thereto was duly served on Daniel Enright on September 22, 1930 and on Morgan Enright on September 24, 1930.

The subscribing witnesses to this instrument duly appeared before the surrogate, were examined and executed depositions in the usual form, attesting to the usual prerequisites to the admission of the will to probate and, no one appearing in opposition upon the return day of the citation, the will was duly marked for decree.

The instrument propounded showed on its face an attempted obliteration of the amount originally inserted therein as a legacy to the proponent and the substitution therefor of other figures as the amount of the legacy to be payable to him.

Obviously this condition required judicial construction to determine the amount and validity of this legacy, and the attorney for the proponent on October 24, 1930, prepared and served upon the special guardian theretofore appointed by the court a notice to the effect that on October twenty-eighth " a further examination of the subscribing witnesses to the will of Robert Enright, deceased, will be held to determine the amount and validity of the bequest to Leo D. McCarthy."

Substantially simultaneously therewith this special guardian filed his report in which he consented to the probate.

It is a pertinent circumstance that up to this point there had been no appearances other than that of the proponent and the special guardian while the usual formal proof as to the genuineness and validity of the will had been given and the matter had been marked for decree.

Upon the return day of the notice of motion just mentioned it was suggested to the attorney for the proponent that since the questions now under consideration affected the construction of the will that notice of such construction be given to the other parties concerned in addition to the special guardian. As a result of this suggestion he prepared and served among others upon Daniel Enright and Morgan Enright notices of a motion returnable on November 12, 1930, which stated that on the date specified " the above proceeding will be set down for rehearing to take expert

testimony regarding the figures erased after the name of Leo McCarthy and to determine the amount of the bequest granted to Leo McCarthy by the will of Robert Enright, deceased." By affidavit attached to the original notice of motion it appears that these notices were served on November 4, 1930.

On November twelfth a notice of appearance was filed in this court on behalf of attorneys for Morgan Enright, a similar notice on behalf of " Daniel Morgan "— apparently intended to mean Daniel Enright — being filed on November 24, 1930.

On the return of the motion on November twelfth it was adjourned by consent of all parties until December third. On November twenty-fourth purported objections to the probate of the will were filed to the effect " that the paper writing offered for probate herein bearing date April 30, 1930, and purporting to have been executed is not the last will and testament of the decedent as it now apparently reads in that the figures scratched out, obliterated, and altered after the name of Leo McCarthy in said paper has operated as a revocation of such alleged bequests to said Leo McCarthy and has made said alleged bequest of no effect."

This paper further reads that the objecting parties " do hereby demand a trial by jury as to the issues raised in the above proceeding regarding the scratching out, obliteration and altering of the figures after the name of Leo McCarthy in the alleged will of the above-named decedent."

The first question for consideration is as to the timeliness of the filing of the objections. In this connection section 147 of the Surrogate's Court Act provides in part that " Such objections must be filed at or before the close of the testimony taken before the surrogate on behalf of the proponent, or at such subsequent time as the surrogate may direct, and if a jury trial of any issue is desired the same shall be demanded in the objections." Since no direction was made in this case by the surrogate in this regard the sole question is as to whether the objections were filed as required before the close of the testimony taken before the surrogate on behalf of the proponent.

As noted the testimony of the subscribing witnesses to the will was completed at the time of the return of the original citation on October 21, 1930. At that time no objection had been filed.

Section 144 of the Surrogate's Court Act (as amd. by Laws of 1929, chap. 229) provides: " If it appears to the surrogate that the will was duly executed; and that the testator, at the time of executing it, was in all respects competent to make a will and under no restraint; it *must* be admitted to probate as a will valid to pass real property, or personal property, or both, as the surrogate

determines, and the petition and citation require, and must be recorded accordingly." (Italics not in original.)

It has frequently been held that the power of the surrogate in this regard is not discretionary but that the direction is mandatory, provided the facts are reasonably made to appear by the testimony. (*Matter of Davis*, 182 N. Y. 468, 474, 475; *Matter of Webb*, 122 Misc. 129, 133; affd., 208 App. Div. 793.)

In the last cited case the court says (at p. 133): " It is the established law of this State that a surrogate must admit a will to probate if it is legally executed by a testator of sound mind and not under restraint, regardless of the invalidity of any or all of its provisions. As a ground for the denial of probate the surrogate will not pass upon the legality of the language of the script. The writing must first be proved as a lawfully executed will before there can be any investigation of the legal effect of its terms."

The difficulty under which Morgan Enright and Daniel Enright seem to be laboring is a failure to distinguish between the separate and distinct functions of the court in admitting a will to probate and in construing that instrument subsequent to probate.

Section 145 of the Surrogate's Court Act provides as follows: " Construction of will, how obtained. An executor, administrator with the will annexed, or any person interested in obtaining a determination as to the validity, construction or effect of any disposition of property contained in a will, may present to the surrogate's court in which such will was probated, a petition setting forth the facts which show his interest, the names and postoffice addresses of the other parties interested, and the particular portion of such will concerning which he requests the determination of the court.

" If the surrogate entertains the application, a citation shall issue to all persons interested in the question to be presented, to show cause why such determination should not be made. On the return of the citation the surrogate shall make such decree as justice requires.

" If a party expressly puts in issue in a proceeding for the probate of a will the validity, construction, or effect of any disposition of property, contained in such will, the surrogate may determine the question, upon rendering a decree, after notice given in such manner as the surrogate directs to all persons interested who do not appear on such application in person or by attorney; or, unless the decree refuses to admit the will to probate, by reason of a failure to prove any of the matters specified in the preceding section, may admit the will to probate and reserve the questions so raised for future consideration and decree."

Whereas the construction on probate is an action by the court

following the probating of the will, it is in essence a separate and distinct thing from such probate. This point has been repeatedly adjudicated and is pointed out in the language of *Matter of Webb* (*supra*). It also appears with clarity in the decision of the Court of Appeals in *Matter of Davis* (182 N. Y. 468), where the court says (beginning at p. 474): " The Code provides that ' before admitting a will to probate, the surrogate must inquire particularly into all the facts and circumstances, and must be satisfied with the genuineness of the will, and the validity of its execution.' (Code Civ. Pro. § 2622.)   The old statute provided that the surrogate should be satisfied with the ' genuineness and *validity* ' of [475] the will and the limitation in the present statute is significant.   (L. 1837, ch. 460, § 17.)

" The Code further provides that: ' If it appears to the surrogate that the will was duly executed; and that the testator, at the time of executing it, was in all respects competent to make a will, and not under restraint; it must be admitted to probate, as a will valid to pass real property, or personal property, or both, as the surrogate determines, and the petition and citation require, and must be recorded accordingly.'   (Code Civ. Pro. § 2623.)   All these facts were duly proved and not one of them was contested.   The surrogate, therefore, had no discretion but was required to admit the will to probate.   The next section provides that: ' If a party expressly puts in issue, before the surrogate, the validity, construction, or effect of any disposition of personal property, contained in the will of a resident of the State, executed within the State, the surrogate must determine the question, upon rendering a decree; unless the decree refuses to admit the will to probate, by reason of a failure to prove any of the matters specified in the last section.' (Id. § 2624.)   It follows by reasonable implication from this section that the surrogate had no power to refuse to admit the will to probate unless there was a failure to prove one or more of the matters specified in section 2623.   The statute contemplates that unless the will is admitted to probate there is no power to construe it. Probate logically precedes construction, for otherwise there is no will to construe.   There is no authority to construe the will for the purpose of defeating probate, although it may be examined to discover its bearing upon questions relating to its execution, the capacity of the testator and the like.   Were the rule otherwise singular result might follow.   If the only disposing clause of a will should devise and bequeath all the property of the testator to a trustee for one hundred years, the surrogate could not refuse to admit it to probate because the gift was void under our statutes, although it would be apparent upon the face of the instrument.

It would be his duty to admit the will to probate upon due proof of the statutory requirements, and, if asked to construe it, to pass upon the validity of the gift afterward."

The distinction is also pointed out in *Matter of Keleman* (126 N. Y. 73, 78, 79), where the differences in the varieties of testimony admissible in the two forms of proceeding received especial attention, it being pointed out that in the probate proceeding extraneous evidence respecting acts and declarations of the testator may be admissible, whereas in a proceeding for construction only the will itself and the circumstances surrounding the testator may be put in evidence as a basis for adjudication.

In the case at bar, therefore, it is evident that the probate proceeding had terminated long before the times of the filing of the objections herein, and that, therefore, more than a month anterior to such time the mandatory obligation on the surrogate to admit the will to probate had been perfected.

The only questions pending at the time the objections were filed were questions as to the construction of the will. By virtue of the terms of subdivision 8 of section 40 and of section 145 of the Surrogate's Court Act, questions of construction must be determined by the surrogate, and on such questions the litigants have no right to trial by jury with the complementary result that the surrogate has no power to authorize it. In this connection see the extremely learned and able opinion of Surrogate FOLEY in *Matter of Erlanger* (136 Misc. 784; affd., 229 App. Div. 778).

It is entirely apparent that for reasons additional to those hereinbefore considered the purported objections are nugatory. In terms they do not attack the validity of the will as a whole but look merely to the operation and effect of certain provisions therein contained. For this reason they were subject to being stricken out had motion been made to that effect. (*Matter of Speiden*, 128 Misc. 899.)

It follows that the objections must be overruled and the demand for a trial by jury thereof denied.

The pending construction proceeding may be brought on by either party for further hearing on five days' notice.

Proceed accordingly.